UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATASHA SHPAK, ROUBEN VARTANOV,
and LILI OUGOULAVA,

                Plaintiffs,

     - against -

MALCOLM CURTIS, JUDITH CURTIS,
BELZONA SYSTEMS OF CALIFORNIA, INC.,
and SIMNAT GLOBAL, INC.,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CV-1818 (RRM)(JO)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

       Plaintiffs bring this action for monetary and equitable relief against defendants Malcolm

and Judith Curtis ("Malcolm" and "Judith" respectively), Belzona Systems of California, Inc.

("Belzona"), and Simnat Global Inc. ("Simnat"), alleging fraud, conspiracy, violation of New

York Civil Rights Law § 80-b, breach of contract, breach of fiduciary duty, conversion, and

unjust enrichment. All defendants are California domiciliaries, and all plaintiffs are New York

domiciliaries. (Compl. (Doc. No. 1) ¶¶ 1–4.) Plaintiffs' claims arise out of an alleged scheme

where Malcolm and Judith's son Simon Curtis ("Simon," and, collectively, the "Curtises"),[1]

promised to marry plaintiff Natasha Shpak, and Malcolm and Judith promised to open a

restaurant in California to support them, all in order to induce plaintiffs to give them certain

restaurant equipment, with which defendants absconded. (Compl. ¶¶ 12, 19.)

       Presently before the Court are defendants' motions to dismiss for lack of subject matter

jurisdiction, lack of personal jurisdiction, improper venue and failure to state a claim, under

Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, and 28 U.S.C.

---

[1] Simon is not a party to the instant litigation.

§ 1406(a). (Defs.' Notice of Mot. to Dismiss (Doc. No. 34) ¶¶ 1–4.) In the alternative, defendants move to transfer this action to the Northern District of California under 28 U.S.C. § 1404(a). (*Id.* ¶ 3.) For the reasons set forth below, defendants' motions are DENIED in their entirety.

## BACKGROUND

The following facts are drawn from plaintiffs' complaint, the factual allegations of which are taken as true for purposes of defendants' motion to dismiss. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Simon met Shpak abroad at the St. Matthews School of Medicine in November 2001. (Compl. ¶ 7.) Simon and his then-wife Natalia became friends with Shpak. In July 2004, Simon and Natalia attended Shpak's birthday party at a Brighton Beach, New York restaurant called the Imperator, owned by Shpak's parents, plaintiffs Rouben Vartanov and Lili Ougoulava. (*Id.* ¶ 10.) Over the course of their ownership, Vartanov and Ougoulava had furnished the Imperator with certain bespoke equipment, including, *inter alia*, custom lighting and sound systems, furniture, and kitchen equipment (collectively, the "Equipment"). (*Id.* ¶¶ 49–50.) Simon told Vartanov and Ougoulava that he was impressed with the Equipment, and that he "wished he could own a restaurant like Imperator." (*Id.* ¶ 11.)

### I. Simon and Shpak's relationship

In January 2007, Natalia died, and a romantic relationship developed between Shpak and Simon. At his wife's funeral in California, which Shpak attended, Simon told Shpak he had romantic feelings for her and gave her various gifts. (*Id.* ¶ 15.) In March 2007, Natasha attended Simon's birthday party in California, where Simon informally proposed marriage and told Natasha of his family's plans to open a restaurant for the couple, to support them in their marriage. (*Id.* ¶ 16.) In April 2007, Simon visited New York, met Shpak's parents, referred to

Shpak as his fiancée, and told them of his family's plans to open a restaurant to support Simon and Shpak. (*Id.* ¶ 19.) Simon expressed his desire to use the Equipment in the new restaurant. (*Id.*) Vartanov and Ougoulava hesitated to part with the Equipment until Simon and Natasha became "officially engaged." (*Id.* ¶ 19.)

In April 2007, Shpak moved to California to live with Simon. (*Id.* ¶ 20.) The Curtises discussed with Shpak extensively the planned restaurant. (*Id.*) Malcolm and Judith told Simon to propose formally to Shpak, and gave him a fake diamond ring for the occasion. (*Id.* ¶ 21.) In July 2007, Simon proposed to Shpak at an upscale restaurant in San Diego, California, and gave her the fake diamond as an engagement ring. (*Id.* ¶ 22.) Shpak did not know the diamond was fake. (*Id.*) At the dinner, Simon called Vartanov and Ougoulava and told them that he and Shpak had become "officially engaged." (*Id.* ¶ 23.) Between July 2007 and December 2007, Simon continued to suggest that Vartanov and Ougoulava give the Equipment to Simon and Shpak as an engagement gift. (*Id.* ¶ 25.) On December 31, 2007, Vartanov and Ougoulava threw an engagement party for Shpak and Simon at the Imperator. (*Id.*¶¶ 26, 28.) At the party, Simon gave Shpak a pair of fake diamond earrings, again at Malcolm and Judith's instruction. Again, Shpak did not know the diamonds were fake. (*Id.* ¶ 27.) Simon discussed the potential engagement gift of the Equipment with Vartanov and Ougoulava. (*Id.* ¶ 28.) Simon agreed with Vartanov and Ougoulava that any gift of the Equipment would be contingent on eventual marriage between Simon and Shpak. (*Id.* ¶ 28.)

In February 2008, after numerous discussions with Vartanov, Simon paid in excess of $25,000 to ship the Equipment to California, placed some of the Equipment in storage, and placed the more valuable items in Malcolm and Judith's home. (*Id.* ¶¶ 29–30.) Subsequently, Malcolm and Judith formed defendant Simnat. Simnat is an amalgam of the first names of

Simon and Shpak. (*Id.* ¶ 31.) Malcolm, Judith and Simon indicated to Shpak that Simnat would belong to Simon and Shpak, and would be the holding company for the new restaurant, which was to be called the "Edge." (*Id.* ¶ 38, 41.) Malcolm and Judith, however, owned 80% of Simnat. (*Id.* ¶ 31.) In October 2008, Vartanov and Ougoulava came to California to visit and stay with the Curtises, who told their visitors that the wedding would take place when financing and other plans for the Edge were more firmly in place. (*Id.* ¶¶ 32–34.) The Curtises approached Vartanov and Ougoulava for a loan and were rebuffed. (*Id.* ¶ 34.) Around April 2009, the Curtises arranged alternate financing. (*Id.* ¶ 35.)

## II. Separation and state litigation

In April 2009, the Curtises had Shpak forcibly evicted from their property, where she had been staying with Simon since April 2007. (*Id.* ¶ 36.) Shpak's ejection was without warning or provocation. (*Id.*) The morning of Shpak's ejectment, Simon left the house, saying he would return after visiting Malcolm and Judith. The Curtises had summoned the police, however, who arrived shortly after Simon left, and removed Shpak from the premises. Shpak had only a brief moment to gather her belongings, and was forced to leave many items behind. (*Id.*) Thus ended any engagement between Shpak and Simon. (*Id.*)

Beginning in April 2009, the Curtises used some of the Equipment to establish the Edge. Other pieces of the Equipment they sold. (*Id.* ¶¶ 38–39.) Some proceeds of the sales were credited to the the Edge's account with Morningstar Productions LLC, an event production company. (*Id.* ¶¶ 41, 48.) The Edge opened in June 2009, managed by the Curtises through Simnat and Belzona. (*Id.* ¶ 41.) Plaintiffs requested that the Curtises return the Equipment, to no avail. (*Id.* ¶¶ 40, 42.)

In October 2009, plaintiffs sued Simon in Kings County Supreme Court seeking damages for conversion of the Equipment. *See Shpak v. Curtis*, No. 024960/2009 (Sup. Ct. Kings Cnty.). Plaintiffs sought and received temporary injunctive relief barring further sale of the Equipment and permitting plaintiffs to inspect the Equipment. (Compl. ¶¶ 46–47.) In the course of the state-court litigation, plaintiffs learned of the Curtis' sale of some of the Equipment, and the sequence of events involving Malcolm and Judith surrounding Simon's proposal. (*See* Compl. ¶¶ 49–51.) The state court awarded plaintiffs preliminary injunctive relief in the form of control over the remaining Equipment in storage, at plaintiffs' expense. (*Id.* ¶¶ 52; Def. Malcolm Curtis' Aff. in Supp. of Mot. to Dismiss ("Malcolm Aff.") Ex. 8 (Doc. No. 34-4), at 72.) The state court action remains pending.

In April 2010, plaintiffs filed the instant complaint alleging fraud, conspiracy, violation of New York Civil Rights Law § 80-b, breach of contract, breach of fiduciary duty, conversion, and unjust enrichment. Defendants contend that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 and personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. § 302, that venue is improper, and that plaintiffs have failed to state a claim upon which relief may be granted.

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris*, 572 F.3d at 71. As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain " 'detailed factual allegations,' " but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

## DISCUSSION

### I.     Subject matter jurisdiction

The diversity statute confers original jurisdiction with respect to "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Plaintiffs allege that the Court has diversity jurisdiction. Defendants do not contest diversity of citizenship,[2] but contend

---

[2] The Court has scrutinized the citizenship of the parties, and finds that plaintiffs, as alleged, are citizens of New York and defendants are citizens of California. (*See* Compl. ¶¶ 1–4, 6; *see also Oscar Gruss & Son, Inc. v.*

that the amount in controversy is less than the $75,000 required to establish jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The Court, however, "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted).

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). The burden is "hardly onerous," *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003), however, because of the "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).

A defendant may rebut the presumption by showing "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase*

---

*Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte*.").)

*Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785). Indeed, "grave doubt about the likelihood of a recovery of the requisite amount" is insufficient; the "legal certainty" standard is a "high bar." *Scherer*, 347 F.3d at 397; *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see also Tongkook*, 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

Here, plaintiffs seek damages or return of the Equipment, allegedly valued at over $500,000, an amount in excess of the required threshold. (*See* Compl. ¶¶ 6, 11, 45, 50, 66, 80.) The plaintiff is entitled to a presumption that this amount is a good faith representation of the amount in controversy. Plaintiffs also have submitted a "Master Equipment List," setting forth in scrupulous detail a description of each "item group" (for example, "70. Ornate Antique Loveseat, quantity 1"; "25. Mirrorball 20" with motor, quantity 2"), the condition of the item, and its cost, for 165 distinct item groups, and a total cost of $572,363. (Decl. of Natasha Shpak in Opp'n to Defs.' Mot. to Dismiss ("Shpak Decl.") Ex. 5 (Doc. 34-8), at 66–75.) Plaintiffs also submit receipts for sound equipment, lighting, video, and other equipment, the cost of which exceeds $75,000. (*Id.* at 76–84.) Defendants contend that an auction of the Equipment for $1,500 by the California storage facility where the Equipment was being kept demonstrates that the jurisdictional threshold is not met. Defendants have submitted a letter from the facility stating the sale. (Malcolm Aff. Ex. 9, at 74.)

Defendants' showing is wholly inadequate to negate plaintiffs' good faith and overcome the presumption to which plaintiffs are entitled. First, the crux of plaintiffs' complaint is that defendants sold or used the most valuable pieces of the Equipment, and the auction only took place only after that damage was already done. Second, the " 'fair market value' of property

means 'neither panic value, *auction value*, speculative value, nor a value fixed by depressed or inflated price,' and . . . the true measure resides in an estimate 'of what is the fair, economic, just, and equitable value under normal conditions.' " *Mathias v. Jacobs*, 238 F. Supp. 2d 556, 576 (S.D.N.Y. 2002) (emphasis added) (citing *In re Bd. of Water Supply of N.Y.*, 277 N.Y. 452, 458–59 (1938)). Plaintiffs, therefore, have established to a 'reasonable probability' that the jurisdictional threshold is met, and defendants' motion to dismiss under Rule 12(b)(1) is DENIED.

## II. Venue and *forum non conveniens*

### A. Propriety of this venue

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, "the plaintiff bears the burden of establishing that venue is proper." *French Transit v. Modern Coupon Sys.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994); *accord Solow Bldg. Co. v. ATC Assocs.*, 175 F. Supp. 2d 465, 469 (E.D.N.Y. 2001). Where, as here, "the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]." *Id.* (quoting *Cutco Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)). In analyzing a claim of improper venue, a court must view all facts and draw all reasonable inferences in the light most favorable to the plaintiff. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007); *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005); *Fisher v. Hopkins*, No. 02-CV-7077 (CSH), 2003 WL 102845, at *2 (S.D.N.Y. Jan. 9, 2003); *see Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (applying the same standard of review under Rule 12(b)(3) and Rule 12(b)(2)).

Venue can be proper in multiple districts, "as long as 'a substantial part' of the underlying events took place in those districts." *Gulf Ins. Co.*, 417 F.3d at 356 (quoting 28 U.S.C. § 1391(a)); *Cont'l Ins. Co. v. Securi Enters., Inc.*, No. 09-CV-3731 (ILG)(VVP), 2010 WL 3702559, at *2 (E.D.N.Y. Aug. 16, 2010). " 'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005).

The instant forum bears a sufficient nexus to the transactions and occurrences underlying the plaintiffs' claims. Simon visited the forum repeatedly, and representations underlying the alleged fraud, described below, were made in New York. With the consent of the Curtises and at their instigation, Simon attended an engagement party in New York, and it was at this party that plaintiffs agreed in principle to ship the Equipment from New York to California, a crucial event underlying the complaint. Plaintiffs allowed the Equipment to be shipped from the New York based Imperator. Plaintiffs also allege numerous communications with the forum state during which defendants made representations giving rise to this litigation. Venue in this forum, therefore, is proper. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153 (2d Cir. 2001) (communications relevant to dispute directed to venue are sufficient to establish proper venue); *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 449 (S.D.N.Y. 2003) (same); 14D Wright, Miller et al., Federal Practice and Procedure § 3806.1 n.12 (3d ed. 2011) ("The requirements of Section 1391(a)(2) may be satisfied by a communication transmitted to or from a district, given a sufficient relationship between the communication and the cause of action; venue was proper when the defendants had visited the district twice and had

transmitted three proposals and initiated nineteen phone calls to the district, since these contacts were in furtherance of the alleged fraud, tortious interference, and unjust enrichment." (citing *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898 (N.D. Ill. 2003))). Defendants' request that the case be dismissed for improper forum pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a), therefore, is DENIED.

### B. *Forum non conveniens*

Defendants seek to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a), which authorizes transfer when more than one venue is proper.[3] The party moving for the transfer has the burden of establishing that its choice of venue is more appropriate. *House of Spices (India), Inc. v. LT Foods Ltd.*, No. 10-CV-2779 (KAM)(RML), 2011 WL 900236, at * 2 (E.D.N.Y. Mar. 15, 2011) (citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950)). In considering a motion to transfer, the Court may consider several factors including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (alteration in original) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)) (internal quotation marks omitted). Further, the plaintiff's choice of forum should be given "great weight." *Id.*

Defendants allege that the convenience of witnesses and defendants mitigates in favor of transferring the action to California. Defendants cite "at least four out of state nonparty witnesses defendants expect will testify on their behalf." (Defs.' Mem. in Supp. of Mot. to Dismiss (Doc. No. 34-5) at 17.) These witnesses are expected to testify to the condition and

---

[3] The Court assumes *arguendo* that venue in the Northern District of California is proper.

value of the Equipment, Shpak's consent to defendants' use of the Equipment, and other admissions allegedly attributable to plaintiffs. First, defendants' position completely overlooks that numerous plaintiffs' witnesses are in New York, including witnesses to the initial purchase of the Equipment over a number of years, and attendees at the engagement party. Second, defendants do not claim that their witnesses would be unwilling voluntarily to testify on defendants' behalf in a New York forum; indeed, defendant "expects" that these witnesses "will testify on their behalf." *See Albert Fadem Trust*, 214 F. Supp. 2d at 344 ("While defendants contend that there 'may be' witnesses whose attendance in a New York litigation this Court would be unable to compel, they offer this as a mere hypothetical with no evidence in support."); *see also* Fed. R. Civ. P. 45(a)(2)(B) (litigants may subpoena witness attendance at depositions outside the forum by availing themselves of subpoena process in the district of the deposition); Fed. R. Evid. 804(b) (admissibility of deposition testimony of unavailable witnesses). Therefore, this factor does not weigh in favor of defendants.

With respect to the other factors, first, the Court accords the plaintiffs' choice of forum "great weight." *Albert Fadem Trust*, 214 F. Supp. 2d at 343; *see Emblaze Ltd. v. Apple Inc.*, No. 10-CV-5713 (PKC), 2011 WL 724275, at *1 (S.D.N.Y. Feb. 25, 2011) ("[T]he moving party . . . must 'make a clear and convincing showing that the balance of convenience favors defendants' choice.' " (quoting *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995))). Second, with regard to the location of documents, defendants do not maintain that relevant documents are in California and, in any event, " '[i]n today's era of photocopying, fax machines and Federal Express, the location of documents' is insignificant, if not totally irrelevant." *Pilevesky v. Suntrust Bank*, No. 10-CV-2290 (JS)(ETB), 2010 WL 4879006, at *4 (E.D.N.Y. Nov. 22, 2010) (quoting *It's a 10, Inc. v. PH Beauty Labs, Inc.*, No. 10-CV-972, 2010

WL 2402848, at *3 (S.D.N.Y. June 14, 2010) (collecting cases)). Third, with regard to the

California locus of certain operative facts, other operative facts underlying the claim occurred in

New York, including allegedly fraudulent statements, thus rendering this factor neutral to the

analysis. *See Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, Nos. 07-CV-975 (HB) *et

al.*, 2007 WL 2068107, at *5 (S.D.N.Y. July 19, 2007). Fourth, neither party suggests that the

relative means of the parties weighs in favor of, or against, transfer. Finally, the Court notes that

New York law applies in this case,[4] weighing slightly against transfer. *Rindfleisch v. Gentiva

Health Sys., Inc.*, 752 F. Supp. 2d 246, 250 (E.D.N.Y. 2010) (quoting *Glass v. S & M NuTec,

LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006)). For these reasons, defendants' motion to

transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a) is DENIED.

### III. Personal jurisdiction under CPLR § 302(a)(2)

Plaintiffs bear the burden of demonstrating that the court may exercise personal

jurisdiction over defendants. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507

(2d Cir.1994). Where, as here, the issue of personal jurisdiction "is decided initially on the

pleadings and without discovery, the plaintiff need show only a prima facie case" on a motion

under Rule 12(b)(2). *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117,

120 (2d Cir. 1984), *accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y.

2010). In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in

the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in

plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2001). Plaintiffs do

not rely on the more common bases for personal jurisdiction set forth in N.Y. C.P.L.R. § 301

apply here. Rather, plaintiffs allege that the Court has personal jurisdiction over defendants

---

[4] Since the parties' memoranda assume New York law controls, their implied consent is sufficient to establish choice of law. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004); *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

under New York's long-arm statute, Civil Practice Law and Rules § 302 ("§ 302"), specifically, subdivision (a)(2) which provides:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> . . . .
>
> 2. commits a tortious act within the state . . . .

The complaint here adequately alleges that defendants, through Simon as their agent or co-conspirator, committed a tortious act in New York, and the Court, therefore, may exercise personal jurisdiction over defendants as to the causes of action set forth in the complaint. "A court's inquiry concerning jurisdiction is distinct from an inquiry concerning the *bona fides* of a plaintiff's causes(s) of action. Nevertheless, the exercise of jurisdiction pursuant to [§ 302(a)(2)] requires, at a bare minimum, that the complaint adequately allege a tortious act committed by [the defendant]." *Family Internet, Inc. v. Cybernex, Inc.*, No. 98-CV-0637 (RWS), 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999) (citing *Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 434 (S.D.N.Y. 1998)). Thus, while liability may only be considered after the defendant is shown to be subject to *in personam* jurisdiction, *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 471 (1988), jurisdictional determinations under § 302(a)(2) blend the question into one on the merits—specifically: "whether the acts attributable to the defendant give rise to a claim of tort." Vincent C. Alexander, Practice Commentaries, § 302 (McKinney 2011).

Whether a defendant's representative is an "agent" for purposes of § 302(a) turns on whether the representative acted "for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter." *Kreutter*, 71 N.Y.2d at 467. The New York activities of a "co-conspirator" may also be imputed to an out-of-state defendant for purposes of personal jurisdiction under § 302(a)(2) under an agency

14

rationale.  *See, e.g., Reeves v. Phillips*, 388 N.Y.S.2d 294, 296 (App. Div. 1976); *see also Cutco Indus.*, 806 F.2d at 366; *Solv-Ex Corp. v. Quillen*, No. 96-CV-6057 (JSR), 1997 WL 452023, at *1 (S.D.N.Y. Aug. 7, 1997); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  To establish jurisdiction on this basis, a plaintiff must "make a *prima facie* showing of a conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy." *First Capital Inv. Holdings LLC v. Wilson Capital Grp.*, No. 10-CV-2948 (JSR), 2010 WL 4967833, at *2 (S.D.N.Y. Nov. 30, 2010) (citing *Chrysler Capital*, 778 F. Supp. at 1266).  A court may infer that defendants are members of a conspiracy if plaintiff alleges specific facts showing that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted 'at the direction or under the control,' or 'at the request of or on behalf of' the out-of-state defendant.' " *Chrysler Capital*, 778 F. Supp. at 1269 (quoting *Dixon*, 507 F. Supp. at 350); *accord Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008); *In re Terrorist Attacks of Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005).

With respect to agency, plaintiffs have met their "modest burden" here, *see Solv-Ex Corp.*, 1997 WL 452023, at *1, by alleging that Malcolm and Judith directed Simon to propose marriage to Shpak, travel to New York to meet with defendants, falsely represent that the Equipment would be used in the Edge to support Shpak and Simon, and induce Ougoulava and Vartanov to entrust the Curtises with the Equipment in California.  Read in the light most favorable to plaintiffs, the complaint alleges that Judith and Malcolm supplied Simon with fake jewelry and otherwise orchestrated Simon's conduct and representations in New York, with the goal of opening the Edge in California using plaintiffs' Equipment, for defendants' own

economic benefit. Malcolm and Judith's conduct as alleged thus meets the benefit, knowledge, consent and control requirements outlined. *See Kreutter*, 71 N.Y.2d at 471. With respect to the merits, as further discussed below, the acts alleged are sufficient to make out claims of fraud, conversion, and the related claims that plaintiffs assert.

With respect to conspiracy, the complaint sufficiently alleges defendants' membership in the conspiracy, as it alleges sufficient facts to demonstrate their direction, control and awareness of Simon's activities in the forum state, as well as the benefits flowing to Malcolm and Judith. Moreover, as discussed below, the complaint alleges a *prima facie* conspiracy between Simon, Malcolm and Judith to defraud plaintiffs. Therefore, the Court may assert personal jurisdiction over these defendants under § 302(a)(2) pursuant to either a conspiracy or an agency theory. For these reasons, defendants motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is DENIED. [5]

### IV. Fraud

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).

Claims concerning fraud are subject to a heightened pleading standard pursuant to Rule 9(b), which provides: "In allegations of fraud or mistake, a party must state with particularity the

---

[5] Because the Court concludes that it has personal jurisdiction over defendants under § 302(a)(2) and the causes of action arising out of plaintiffs' loss of the Equipment, the Court does not reach plaintiffs' argument that it also has jurisdiction under other sections of the New York long-arm statute. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1110 (2d Cir. 1997). The Court notes, moreover, that defendants do not claim that the assertion of personal jurisdiction here would violate the due process clause of the Fourteenth Amendment.

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Thus, fraud allegations in a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *accord Knoll v. Schectman*, 275 F. App'x. 50, 50–51 (2d Cir. 2008); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  Conclusory allegations of fraud will be dismissed under Rule 9(b).  *See Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971).  Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) ("Rule 9(b) applies to all common law fraud claims, including claims under state law.").

However, allegations regarding the knowledge of the participants and their roles, and the state of mind of the participants can be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  "Thus, while the actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity . . . [The Second Circuit] appl[ies] the more general standard to scienter for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (internal quotation marks and citations omitted).

Plaintiffs' complaint adequately establishes a claim for fraud under Rule 9(b).  First, Plaintiffs allege that defendants repeatedly represented that they would use the Equipment to

17

start a restaurant to support Simon and Shpak in their marriage.  Defendants are alleged to have made the representations numerous times, under specific circumstances:  in April 2007 when Simon met Ougoulava, Shpak and Vartanov in New York; when Shpak moved to California to live with Simon; at the engagement party in December 2007; and in February 2008, when Simon paid to ship the Equipment to California, and defendants approached Ougoulava and Vartanov for a loan.  These allegations adequately particularize the content, time, place, speaker, and other circumstances necessary to meet the requirements of Rule 9(b) for pleading misrepresentation. *See, e.g.*, *Fisher v. APP Pharm., LLC*, No. 08-CV-11047 (BSJ), 2011 WL 812277, at *7 (S.D.N.Y. Mar. 1, 2011); *Loewy v. Stuart Drug & Surgical Supply, Inc.*, No. 91-CV-7148 (LBS), 1999 WL 76939, at *5 (S.D.N.Y. Feb. 11, 1999).

Second, scienter also is inferable circumstantially, *i.e.*, that defendants made the misrepresentations without any intention to form the Edge to support Simon and Shpak's marriage, but for their own benefit.  Although defendants' alleged statements concern future plans, plaintiffs allege with sufficient particularity that defendants "at the time the promissory representation[s were] made, never intended to honor or act on [their] statement[s]." *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 596 (E.D.N.Y. 2000) (collecting cases). This inference is supported by acts of defendants, such as gifts of fake jewelry to bolster their promises, the formation of a holding corporation with ownership different from that which the defendants represented, and the suspicious timing of Shpak's ejectment, which followed immediately defendants' loan commitment and also came close on the heels of defendants' latest representations that they would establish the Edge for the benefit of Shpak and Simon.  *See, e.g.*, *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (allowing claim for fraud based on statements of future intent because of suspicious timing of the representations and other

circumstances ); *cf. Murray v. Xerox Corp.*, 811 F.2d 118, 124 (2d Cir. 1987) (mere failure to perform following a promise of future conduct insufficient to support fraud claim).

Third, the Court may infer that the Curtises made the misrepresentations intending that plaintiffs rely thereon. As alleged, the Curtises took steps calculated to ensure that plaintiffs would rely on the genuineness of their representations and ship the Equipment: they repeated their intent to form the Edge to benefit Shpak, convinced the defendants that the engagement was "official," gave Shpak gifts that appeared valuable, and formed a purported holding corporation for Shpak. It is reasonable to infer that defendants "promised to . . . look out for [Shpak's] best interests, in order to persuade [plaintiffs] to enter into the transaction." *In re Ridley*, 453 B.R. 58, 76 (Bkrtcy. E.D.N.Y. 2011)

Fourth, the reasonableness of plaintiffs' reliance on defendants' representations, generally a fact-laden inquiry, also is adequately pled. The complaint reveals that plaintiffs initially were skeptical of the Curtises' plan, and relied on the Curtises' misrepresentations by shipping the Equipment only after they were reasonably convinced of the Curtises' trustworthiness. Specifically, plaintiffs insisted that Simon and Shpak be "officially engaged," received assurances that the wedding would go forward, visited the Curtises in California and hosted Simon in New York, and resisted plaintiffs' requests for two years before finally shipping the Equipment. Plaintiffs took reasonable steps to ensure that defendants, whom they viewed as their future in-laws, were "reliable and trustworthy," satisfying this element for pleading purposes. *Ruso v. Morrison*, 695 F. Supp. 2d 33, 50 (S.D.N.Y. 2010); *see Stair v. Calhoun*, No. 07-CV-3906 (JFB)(ETB), 2009 WL 3259482, at *3 (E.D.N.Y. Oct. 8, 2009) (noting that reasonable reliance is generally a question of fact) (citing cases).

Fifth, plaintiffs have adequately alleged that the defendants' conduct proximately caused them economic harm. Plaintiffs have alleged that, as a direct and immediate result of defendants' misrepresentations, they suffered the loss of the Equipment that they acquired at great cost. Loss of the Equipment is a concrete, definite injury, and is sufficient to support a claim of fraud. *See Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000); *Smith v. Horsehead Industries, Inc.*, No. 90-CV-6993 (SAS), 1995 WL 406024, at *10 (S.D.N.Y. July 10, 1995) ("Generally, the damages in a fraud cause of action must be more than speculative and conditional and must be proximately caused by defendant's conduct.") (citing cases).

Defendants contend that the fraud claim must fail because it is duplicative of the contract claim. The Court disagrees. A fraud claim must be "sufficiently distinct from the breach of contract claim." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Fraud and contract claims are parallel and may be maintained separately where the plaintiff: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* at 20 (internal citations omitted); *see Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 425 (S.D.N.Y. 2004) (claims for fraud and a breach of contract claim can coexist where the plaintiff makes one of three showings discussed in *Bridgestone/Firestone*).

Here, plaintiffs' fraud and contract claims are distinct. The breach of contract claim, described below, alleges a very narrow promise concerning the shipping and safekeeping of the Equipment, while the fraud claim alleges a raft of overarching misrepresentations, both preceding and succeeding the formation of the contract. The fraud, therefore, is collateral or

extraneous to the contract, in the nature of fraud in the inducement of a contract. *See, e.g.*, *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979) (reversing dismissal of collateral fraud claim because it "consisted of independent false representations, made before there ever was a contract between the parties"); *Woods v. Maytag Co.*, No. 10-CV-0559 (ADS)(WDW), 2010 WL 4314313, at *13 (E.D.N.Y. Nov. 2, 2010) (noting that plaintiff could state claims for fraud and breach of contract where the misrepresentations were made "were made in order to promote and induce the purchase of [defendant's] product" (internal quotation marks omitted)); *Cavalier Label Co., Inc. v. Polytam, Ltd.*, 687 F. Supp. 872, 878 (S.D.N.Y. 1988) (denying dismissal of fraud claim where defendant's misrepresentations preceded contract, noting "separate interests at stake in plaintiff's contract and fraud claims"). Moreover, as described below, plaintiff has adequately pled that defendants owed a fiduciary duty independent of the contract, which also allows the fraud claim to stand parallel to the contract. *See, e.g.*, *Bullmore v. Banc of Am. Secs. LLC*, 485 F. Supp. 2d 464, 470 (S.D.N.Y. 2007).

For these reasons, the Court finds that plaintiffs' complaint adequately alleges fraud under Rule 9(b), and defendants' motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

## V.      Conspiracy to commit fraud

To state a claim for conspiracy to commit fraud, " ' it is important that within the pleader's ability to do so, and without going into unnecessary detail, the opposing party be informed of the nature of the conspiracy charged. . . . Where possible, there should be some details of time and place and the alleged effect of the conspiracy . . . . Moreover, great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading.' " *Banks v. Consumer Home Mortg., Inc.*, No. 01-CV-

8508 (ILG), 2003 WL 21251584, at *5 (E.D.N.Y. Mar. 28, 2003) (quoting *777388 Ont. Ltd. v. Lencore Acoustics Corp.*, 142 F. Supp. 2d 309, 319 n.4 (E.D.N.Y. 2001)). Thus, while fraud must be alleged with particularity, the facts constituting a conspiracy need not. *See Andre Emmerich Gallery, Inc. v. Segre*, No. 96-CV-889 (CSH), 1997 WL 672009, at *8 (S.D.N.Y. Oct. 29, 1997) ("pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)") (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)).

The substance of the pleading to be measured under the conspiracy pleading standard must allege "the primary [fraud] and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury." *Lencore*, 142 F. Supp. 2d at 319.

As explained above, the complaint adequately alleges that defendants defrauded plaintiffs of the Equipment. Furthermore, plaintiffs adequately have alleged a "corrupt agreement" among the Curtises to take the Equipment and use it for their own gain, by exploiting the relationship between Simon and Shpak, and promising to use Malcolm and Judith's finances and connections to establish a restaurant. Plaintiffs allegations surrounding Shpak's visit to California in March 2007, Simon and Shpak's continued relationship, the Curtises' repeated references to the formation of the Edge, and their gifts of fake jewelry, indicate an illicit agreement spanning Simon and Shpak's relationship. Overt acts in furtherance of the agreement include the use and sale of certain pieces of the Equipment before and after Simon and Natasha's relationship ended. The complaint alleges that defendants participated intentionally, and that the loss of the Equipment caused plaintiffs to suffer economic harm. Thus, the complaint adequately alleges

that defendants conspired to commit a fraud. For these reasons, defendants' motion to dismiss the conspiracy to defraud claim pursuant to Rule 12(b)(6) is DENIED.

## VI. New York Civil Rights Law Section 80-b

Section 80-b of the New York Civil Rights Law provides:

> Nothing in this article contained shall be construed to bar a right of action for the recovery of a chattel, . . . or the value thereof at the time of such transfer, or the rescission of a deed to real property when the sole consideration for the transfer of the chattel . . . or real property was a contemplated marriage which has not occurred, and the court may, if in its discretion justice so requires, (1) award the defendant a lien upon the chattel . . . or real property for monies expended in connection therewith or improvements made thereto, (2) deny judgment for the recovery of the chattel . . . or for rescission of the deed and award money damages in lieu thereof.

N.Y. Civ. Rights Law § 80-b ("§ 80-b"). The purpose of the statute "is to return the parties to the position they were in prior to their becoming engaged, without rewarding or punishing either party for the fact that the marriage failed to materialize." *Gaden v. Gaden*, 29 N.Y.2d 80, 89 (1971). Plaintiffs contend that the statute entitles them to recovery of Equipment, or its value, as a chattel transferred in sole consideration of the contemplated marriage between Simon and Shpak. Defendants argue that the statute is inapplicable because plaintiffs do not allege that the "sole consideration" for the Equipment was the "contemplated marriage," but the promise to establish the Edge.[6] However, "it is necessary to interpret the word 'consideration', as used in [§ 80-b], to mean motive or reason." *Gaden*, 29 N.Y.2d at 86. Moreover, § 80-b gives rise to "a strong presumption of law that any gifts made during an engagement period are given solely in consideration of marriage, and are recoverable if the marriage does not materialize." *Friedman v. Geller*, 368 N.Y.S.2d 980, 982 (Sup. Ct. N.Y. Cnty. 1975). Plaintiffs here adequately have alleged that the transfer of the Equipment was transferred only after Simon and Shpak became

---

[6] Defendants also deny that Simon and Shpak were ever actually engaged, but the Court will not address this issue of fact on a motion to dismiss and instead, as it must, take the pleadings as true. (*See, e.g.*, Defs.' Mem. in Supp. (Doc. No. 34-5) at 18; *see also, e.g.*, *Harris*, 572 F.3d at 71.)

"officially engaged," and before Shpak was ejected from the Curtis' property, entitling them to a strong presumption that the transfer was made in contemplation of marriage. In any event, the complaint also alleges that defendants represented that the formation of the Edge was itself motivated solely by the contemplated marriage of Simon and Shpak, thus rendering it irrelevant whether the transfer was motivated by the marriage or the promise to form the Edge.[7] Therefore, the Court finds that plaintiffs have adequately alleged a violation of § 80-b, and defendants' motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

## VII. Breach of contract

Under New York law, a plaintiff must prove four elements to prevail on a breach of contract claim: (1) the making of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages suffered by plaintiff. *Pfizer. Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 146 (S.D.N.Y. 2004); *accord Eastman Kodak Co. v. STWB Inc.*, 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002). "New York law recognizes the existence of oral contracts. Whether or not a contract was formed depends on the intent of the parties at the time of contract formation." *Haskell Co. v. Radiant Energy Corp.*, No. 05 CV 4403 (DLI)(MDG), 2007 WL 2746903, at *8 (E.D.N.Y. Sept. 19, 2007) (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) ("Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document.")).

Here, the complaint adequately alleges breach of contract. Plaintiffs allege that they entered into an agreement with the Curtises where plaintiffs agreed to allow the Equipment to be

---

[7] Defendants also contend that the § 80-b claim must fail as the statute is applicable only as between the engaged parties, while here, the property transfer was made by Malcolm and Judith. The plain language of the statute does not support defendants' argument, and defendants cite no other authority for their position. To the contrary, New York courts have construed § 80-b to apply to third party donors and donees. *See, e.g., Gaden*, 29 N.Y.2d at 87; *Bruno v. Guerra*, 549 N.Y.S.2d 925, 926 (Sup. Ct. N.Y. Cnty. 1990) ("[a] person such as a parent of either party should be able to sue to recover gifts given by the party") (citing *Costas v. Marmarellis*, 111 N.Y.S.2d 909 (Sup. Ct. App. Term 1951)).

shipped to California before the marriage, in exchange for the Curtises' promise to safeguard the Equipment until the marriage, at which point the Equipment would be used for the Edge.[8] The plaintiffs contend that they performed by allowing the shipment, and that the Curtises breached by failing to return the Equipment when the marriage did not occur, and by using or selling pieces of the Equipment. Plaintiffs' breach of contract theory is appropriately brought as an alternate theory of recovery to the Civil Rights Law § 80-b claim. *See* Fed. R. Civ. P. 8(a)(3). Defendants contend that the breach of contract claim runs afoul of the bar on enforcing contracts to marry under New York Civil Rights Law § 80-a, but the claim here is for breach of contract to care for and return the Equipment, which is more in the nature of a bailment, not for failure to perform a promise to marry. *See* § 80-a ("The right[] of action to recover sums of money as damages for . . . breach of contract to marry [is] abolished. . . .); *Pivar v. Graduate Sch. of Figurative Art of the N.Y. Acad. of Art*, 735 N.Y.S.2d 522, 524 (App. Div. 2002) (discussing bailments); *see also Gubbins v. Fee*, 559 N.Y.S.2d 625, 627 (Sup. Ct. N.Y. Cnty. 1990) (holding that an agreement to transfer property made contingent on marriage, and which would be "void if said marriage does not occur" does not violate § 80-a). Therefore, defendants' motion to dismiss the breach of contract claim is DENIED.[9]

**VIII. Fiduciary duty claims**

Under New York law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; and (2) the breach of that fiduciary duty. *See Russo v. Banc of Am. Sec., LLC*, No. 05-CV-2922 (DAB), 2007 WL 1946541, at *8 (S.D.N.Y. June 28, 2007). The

---

[8] Defendants' bald denial of the existence of an agreement in fact does not affect the Court's analysis, as the Court is bound to take plaintiffs' factual allegations as true and draw inferences in plaintiffs' favor in the context of a motion to dismiss. *See, e.g., Harris*, 572 F.3d at 71.

[9] Defendant contends that the breach of contract claim is barred by the U.C.C.'s Statute of Frauds, N.Y. U.C.C. §§ 2-201, 1-206. Plaintiff, however, has not alleged a sale, as that term is defined in the U.C.C. *See* N.Y. U.C.C. § 2-106 ("A 'sale' consists in the passing of title from the seller to the buyer for a price.").

determination of whether a fiduciary duty exists cannot be determined "by recourse to rigid formulas." *Scott v. Dime Sav. Bank*, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995). "When examining whether a fiduciary relationship exists under New York law, a court examines 'whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first.' " *Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.*, 833 F. Supp. 344, 349–50 (S.D.N.Y. 1993); *see also Mandelblatt v. Devon Stores*, 521 N.Y.S.2d 672, 676 (App. Div. 1987) (" 'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' " (quoting Restatement (Second) of Torts § 874, cmt. a)). The inquiry is "fact-specific." *Facella v. Fed'n of Jewish Philanthropies of N.Y., Inc.*, No. 98-CV-3146 (DAB), 2004 WL 1700616, at *6 (S.D.N.Y. July 30, 2004).

A defendant aids and abets a breach of fiduciary duty if he knowingly participates in the breach by providing "substantial assistance" to the primary violator. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (App. Div. 2003) (citing, *inter alia*, *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 849 (2d Cir. 1987)). A defendant substantially assists the primary violator when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. *See Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996). "However, inaction constitutes substantial assistance only when an 'independent duty to act was a duty owed to the defrauded [victim].' " *Id.* at 247 (S.D.N.Y. 1996) (quoting *Dillon v. Militano*, 731 F. Supp. 634, 639 (S.D.N.Y. 1990))

Plaintiffs allege that Malcolm and Judith stood in a fiduciary relationship with Shpak as their prospective daughter-in-law, and that they breached this duty when they gained possession of the Equipment pursuant to a fraudulent scheme, and used or sold it without permission.

Drawing all inferences in favor of plaintiffs, the Court finds that the complaint adequately alleges the existence of a fiduciary duty here. Plaintiffs have alleged that Shpak lived with defendants, and reposed her trust in them to help support Simon and Shpak in their engagement and marriage. Defendants repeatedly told Shpak of their plans to establish the Edge to support Simon and Shpak in their marriage. Malcolm and Judith went to great lengths to win Shpak's trust, by providing her with gifts, forming a corporation ostensibly for the benefit of her and Simon in which Malcom and Judith retained 80% ownership, and encouraging Simon and Shpak in their courtship. Under these circumstances, it is indeed plausible that Shpak "reposed trust or confidence in the integrity and fidelity" of Malcolm and Judith. *Teachers Ins.*, 833 F. Supp. at 349–50. The defendants' alleged fraudulent scheme, therefore, would amount to a breach of their fiduciary duty.

Moreover, courts have found that prospective spouses may owe each other a fiduciary duty. *See Rosenzweig v. Givens*, 879 N.Y.S.2d 387, 389 (App. Div. 2009); *Colello v. Colello*, 780 N.Y.S.2d 450, 454 (App. Div. 2004); *see In re Greiff*, 92 N.Y.2d 341, 344–345 (1998); *Christian v. Christian*, 42 N.Y.2d 63, 72 (1977). Plaintiffs have adequately alleged that Simon owed Shpak a fiduciary duty, where she cohabitated with him, and he, like Malcolm and Judith, provided various assurances and gifts to win her trust. Simon's role in the fraud depriving plaintiffs of the Equipment, and the subsequent use and sale of the Equipment, is sufficient to establish breach of the fiduciary duty. In light of the Court's findings with respect to Malcolm and Judith's cooperation with Simon in a conspiracy, or as his principals, the Court finds also that the complaint adequately alleges a claim for aiding and abetting Simon's breach.

Therefore, defendants' motion pursuant to Rule 12(b)(6) to dismiss the claims for breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty, is DENIED.

## IX.    Conversion and unjust enrichment

" 'Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's.' " *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 404 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)); *see New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (2002) (tortfeasor's exercise of rights to exclusion of owner). The "denial or violation of the plaintiff's dominion, rights, or possession" over plaintiff's property also qualifies as conversion. *Sporn v. MCA Records*, 58 N.Y.2d 482, 487 (1983) (internal quotation marks omitted).[10]

Here, plaintiffs have alleged that they owned the Equipment, and that defendants in possession of the Equipment refused to return it despite plaintiffs' request, and sold or used it as if it belonged to defendants. Defendants' acts, as alleged, meet the elements of conversion, as they amount to the "unauthorized assumption and exercise of the right of ownership" of the Equipment, in denial of plaintiffs' rights, and to plaintiffs' exclusion. *See Thyroff*, 460 F.3d at 404; *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) ("If possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property.").

Unjust enrichment requires a showing "that the defendant benefitted at the plaintiff's expense and that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiffs' complaint alleges that defendants benefitted at plaintiffs' expense when they allowed the Equipment to be shipped and defendants sold or used part of it, and that they are entitled, in fairness, to restitution of value that is rightfully theirs. Plaintiff asks

---

[10] Plaintiffs seek money damages, the imposition of a constructive trust, and replevin. Although it is far too early in the litigation to determine the remedies to which plaintiffs may ultimately be entitled, the Court notes that replevin, damages or the imposition of a constructive trust may prove appropriate remedies if plaintiffs are ultimately successful on their claims. *See, e.g., In re Schick*, 246 B.R. 41, 44–46 (Bankr. S.D.N.Y. 2000) (discussing remedies).

for restitution in the alternative, *i.e.*, if plaintiffs' contract, fraud and conversion claims should fail, plaintiffs contend that they are entitled to restitution.  *See* Fed. R. Civ. P. 8(a)(2).  Under the circumstances, the Court declines to dismiss the unjust enrichment claim, as it is adequately pled and will not affect discovery of the related claims sounding in contract, fraud, conversion, and breach of fiduciary duty.  For these reasons, defendants motion pursuant to Rule 12(b)(6) to dismiss the unjust enrichment and conversion claims is DENIED.

## CONCLUSION

For the reasons stated in this Memorandum and Order, defendants' motions to dismiss or transfer to the Northern District of California (Doc. No. 34) are DENIED in their entirety.  This matter is recommitted to the assigned magistrate judge for supervision of discovery and all other pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York
   September 26, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge