```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NATASHA SHPAK, et al.,                                          MEMORANDUM AND ORDER
                        Plaintiffs,
        - against -                                             10-CV-1818 (WFK) (JO)
MALCOLM CURTIS, et al.,
                        Defendants.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiffs Natasha Shpak ("Shpak"), Rouben Vatanov, and Lili Ougoulava have asserted a variety of tort and contract claims against defendants Malcolm and Judith Curtis (respectively, "Malcolm" and "Judith"), Belzona Systems of California, Inc. ("Belzona"), and Simnat Global Inc. ("Simnat"). Having secured certain information in the discovery process, they now seek leave to amend the complaint to include additional factual allegations and legal claims, and to add as a named defendant the 2002 Malcolm Curtis and Judith Curtis Revocable Trust (the "Curtis Trust"). The defendants oppose the motion on the grounds that the proposed amendment is both futile and untimely. For the reasons set forth below, I grant the plaintiffs' motion.

I.  Background

I assume the reader's familiarity with the factual circumstances and procedural history of this action, as described in an opinion by the Honorable Roslynn R. Mauskopf, United States District Judge, denying the defendants' motion to dismiss the Complaint. *See Shpak v. Curtis*, 2011 WL 4460605, at *1-3 (E.D.N.Y. Sept. 16, 2011). I include here only the background information relevant to the instant motion to amend. For purposes of analysis, I assume the facts alleged in the plaintiffs' pleadings to be true.

Plaintiff Shpak is the daughter of plaintiffs Vatanov and Ougoulava. They allege that defendants Malcolm and Judith Curtis, together with their son, non-party Simon Curtis ("Simon" or, collectively with his parents, the "Curtises"), hatched a scheme to induce Shpak's parents to

give valuable restaurant equipment to the Curtises – equipment with which the Curtises later absconded. As part of the scheme, the plaintiffs allege that Simon falsely promised to marry Shpak and Simon's parents falsely promised to open a restaurant in California to support the couple. Docket Entry ("DE") 1 (the "Complaint") ¶¶ 7-52. In their original complaint, the plaintiffs further alleged that, sometime after February 2008, Malcolm and Judith formed defendant corporation Simnat as a holding company for the new restaurant, which was to be called "The Edge." *Id.* ¶¶ 29-31, 38. Although Malcolm and Judith suggested to Shpak that she and her fiancé would jointly own Simnat, they in fact retained an 80 percent ownership interest in the company. *Id*. ¶ 31.

The plaintiffs filed their complaint on April 23, 2010, asserting claims of fraud, conspiracy, violation of Section 80-b of the New York Civil Rights Law, breach of contract, breach of fiduciary duty, conversion, and unjust enrichment. *See* DE 1. The defendants did not answer the complaint, but instead moved to dismiss the action on a variety of grounds. *See* DE 34.

Notwithstanding that motion, and over the defendants' objection, I ordered the parties to commence discovery. DE 32. Pursuant to that decision, I entered a case management and scheduling pursuant to Federal Rule of Civil Procedure ("Rule") 16(b) that set deadlines not only for the completion of discovery but also for other pretrial matters, including a deadline of January 31, 2011, for any party to seek to join a new party or amend its pleadings. *See* DE 33 at 1.

On November 24, 2010, in support of their motion to dismiss, the defendants served an affidavit in which Malcolm stated that Shpak had owned 50 percent of Simnat until at least July 18, 2008, citing as evidence a form submitted to the IRS on that date indicating that Simnat was jointly owned by Simon and Shpak. DE 34-11 ("Malcolm Aff.") ¶ 13, DE 34-12 (exhibits) at 39-40; DE 34-14 (affidavit of service).

On January 18, 2011, in response to the plaintiffs' request for "[a]ll documents reflecting the corporate structure and formation of … Simnat," the defendants produced the first and fifth pages of a "buy-sell agreement" between Simnat and the Curtises dated September 1, 2008. DE 55 ¶ 2, Ex. 1 (defendants' discovery response) at 3 & Ex. 3 (agreement) at 1-2. The agreement identified the three Curtises as Simnat's corporate officers, and indicated that 1,000 shares of common stock in the corporation had been issued in the following amounts: 200 shares to Simon, 400 shares Malcolm as "trustee of the [Curtis] Trust[,]" and 400 shares to Judith in the same capacity. DE 55 Ex. 3 at 1-2. The defendants also simultaneously produced three stock certificates reflecting the issuance of Simnat shares as described in the agreement. DE 55 ¶ 2, Ex. 4. In addition to these documents, the plaintiffs obtained other documents during discovery relating to the ownership of Simnat, including a corporate questionnaire submitted to the California Department of Alcoholic Beverage Control indicating that, as of September 1, 2008, all shares of Simnat were held by the Curtises in the proportions described above, and a print-out from the California Department of Alcoholic Beverage Control online query system indicating that the ownership of Simnat remained unchanged through September 28, 2011. DE 50 Exs. C, E.

As of May 11, 2011, the parties had exchanged documents and responses to interrogatories, but had not yet taken any depositions. Because the defendants' dismissal motion remained undecided at that time, the parties jointly asked me to extend the discovery deadline. DE 41. I granted the request and entered the following order: "To the extent any claims remain pending upon the resolution of the dismissal motion, the parties shall confer and, no later than one week after entry of the court's ruling, submit a proposed schedule for the expedited completion of all remaining discovery." Order dated May 16, 2011.

On September 26, 2011, the court denied the defendants' motion to dismiss. DE 43. A week later, pursuant to my order, the parties submitted a proposed schedule for the completion of all remaining discovery. DE 44. The plaintiffs proposed a schedule that included a new deadline of December 31, 2011, for the amendment of pleadings or joinder of parties – notwithstanding the fact that the deadline for such actions had already lapsed at the time I granted the parties' request to extend the original schedule. *See id.*; DE 33 at 1. The defendants objected to that aspect of the plaintiffs' proposal – but *not* because the original deadline for amendments had passed or because they contended that allowing any amendment or joinder would somehow be prejudicial. Instead, the defendants said no more than that they "did not agree to the inclusion of a deadline for the joinder of additional parties and the amendment of the pleadings in [the parties' joint scheduling submission] because it is not a 'discovery' item." DE 44 at 1.

On October 12, 2011, I met with the parties to discuss discovery and other pretrial matters. The plaintiffs' counsel raised the possibility of adding new claims and a new defendant, and the defendants' counsel objected. After hearing from both sides, I ordered the parties to confer further on the issue and ruled that in the event they could not reach an agreement, the plaintiffs could file a motion to amend no later than October 26, 2011. DE 47. On the same day, pursuant to Rule 16(b), I entered an Amended Case Management and Scheduling Order that included a new deadline of October 26, 2011, for any party to amend its pleading or join a new party. DE 47 at 1.

The plaintiffs met that deadline. On October 26, 2011 they plaintiffs filed the instant motion seeking leave to amend the complaint to add additional facts and claims based upon the information obtained during discovery, and to add the Curtis Trust as a defendant. DE 50. Specifically, the plaintiffs have seek to supplement the complaint to allege three facts.

4

First, the plaintiffs seek to allege that Shpak was a 50 percent owner of Simnat upon its formation – a fact that the defendants apparently believe to be true. DE 50 Ex. 3 (the proposed Amended Complaint ("PAC") ¶¶ 56-58; *see* Malcolm Aff. ¶ 13. Second, they seek to allege that Shpak was dispossessed of her interest in Simnat, without compensation, on or about September 1, 2008, when Simnat issued shares of its stock to the Curtises. PAC ¶¶ 38, 59-61. Third, they wish to allege that Malcolm and Judith transferred their respective interests in Simnat to the Curtis Trust – which they created, and for which they serve as both trustees and beneficiaries – without fair consideration. PAC ¶¶ 5-6, 64-65.

Based on those new factual allegations, as well as those originally pleaded in the current Complaint, the plaintiffs seek to assert additional claims against the defendants, and against the Curtis Trust. Specifically, as a result of the allegedly wrongful divestiture of Shpak's interest in Simnat, they seek to plead claims of conversion and of aiding and abetting a breach of fiduciary duty. In addition, they assert that the transfer of Malcolm's and Judith's interests in Simnat to the Curtis Trust without adequate consideration supports a fraudulent conveyance claim under Sections 273-a and 276 of the New York Debtor and Creditor Law.

The defendants oppose the amendment on several grounds. They argue that the first two proposed claims are futile because they are both time-barred. The defendants also contend that the conveyance by Malcolm and Judith to the Curtis Trust of their interests in Simnat did not put those interests beyond the reach of potential creditors, and therefore cannot have been a fraudulent conveyance as a matter of law; as a result, they argue that the fraudulent conveyance claim, like any claim against the Curtis Trust, is futile. Finally, the defendants ask the court to deny the motion to amend because the plaintiffs waited too long to seek such leave.

II.   Discussion

    A.   Standard of Review

The motion to amend a complaint to add both new claims and a new defendant implicates Rules 15(a) and 21. *See Momentum Luggage & Leisure Bags v. Jansport, Inc.*, 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001). The former allows a party to amend its pleading once as a matter of course within 21 days after a responsive pleading is served or "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The latter provides that a court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Both rules trigger the same standard of review. When a party seeks to add a new claim, in the absence of reasons to deny the application such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party … futility of amendment, etc.[,] the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). Rule 21 likewise allows a court broad discretion to add a party, *Sullivan v. West New York Residential, Inc.*, 2003 WL 21056888, at *1 (E.D.N.Y. Mar. 4, 2003), and the exercise of that discretion should be "guided by the same standard of liberality afforded to motions … under Rule 15." *Rissman v. The City of New York*, 2001 WL 1398655, at *1 (S.D.N.Y. Nov. 8, 2001).

Where a party opposes a proposed amendment on the ground that it is futile, the court should review the proposed claim as it would in considering a motion for dismissal under Rule 12(b)(6). *See*, *e.g.*, *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Amna v. New York State Dep't of Health*, 2009 WL 6497844, at * 1 (E.D.N.Y. Sept.3, 2009) (quoting *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n. 1 (E.D.N.Y. Mar.25, 2009)). I therefore

accept the proposed amended complaint's material factual allegations as true, and I may not deny leave to amend on the ground of futility unless the proposed pleading fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). "The non-moving party bears the burden of demonstrating why leave to amend should be denied on futility grounds." *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) (citing *Blaskeiwicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

Where a defendant opposes an amendment on the grounds of undue delay, a court may deny leave to amend only if the plaintiff waited an "inordinate" amount of time to seek leave to amend, and only then if the plaintiff offers "no satisfactory explanation … for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). The standard for seeking an amendment in the face of delay is more exacting if the moving party fails to seek leave within the time prescribed in a scheduling order entered under the authority of Rule 16(b). In such circumstances, the moving party must demonstrate "good cause" for the delay. *See* Fed. R. Civ. P. 16(b)(4); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2005); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 2012 WL 98493, at *2

(S.D.N.Y. Jan. 11, 2012); *Alexander v. Westbury Union Free School Dist.*, --- F. Supp. 2d ----, 2011 WL 5401806, at *22 (E.D.N.Y. Nov. 4, 2011); *Hogan v. J.P. Morgan Chase Bank*, 2008 WL 4185875, at *2 (E.D.N.Y. Sept. 4, 2008). A party seeking to establish such good cause must show that it has been reasonably diligent in trying to meet the applicable deadline – a standard that is not satisfied if the proposed amendment relies on information that the party knew or should reasonably have discovered in advance of the deadline. *See*, *e.g.*, *Perfect Pearl Co.*, 2012 WL 98493, at *2; *Lamothe v. Town of Oyster Bay*, 2011 WL 4974804, at *6 (E.D.N.Y. Oct. 19, 2011).

    B.    <u>Futility</u>

        1.    <u>Conversion And Breach Of Fiduciary Duty Claims</u>

The plaintiff's proposed claims for damages for conversion and breach of fiduciary are each subject to a three-year statute of limitations. *See In re All American Petroleum Corp.*, 259 B.R. 6, 21 (Bankr. E.D.N.Y. 2001) (three year limitations period for conversion action begins when the conversion occurs) (citing N.Y. C.P.L.R. § 214(3); *Vigilant Ins. Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y.2d 36, 44 (1995)); *Carbon Capital Mgmt., LLC v. American Express Co.,* 932 N.Y.S.2d 488, 495 (App. Div. 2011) (three year limitations period for claim for breach of fiduciary duty applies to claims for monetary relief). A court may deny leave to amend a complaint on the ground of futility if the proposed new claims are barred under the relevant statute of limitations. *See Semper*, 786 F. Supp. 2d at 581-582; *Farbstein v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004).

The plaintiffs assert the proposed claims based on an allegation that the Curtises improperly divested Shpak of her ownership interest in Simnat on or about September 1, 2008. PAC ¶¶ 98-102. The plaintiffs were therefore required to assert their claims no later than

8

September 1, 2011. The plaintiffs argue that even though they did not seek to assert their claims before that deadline, their proposed amendment is not futile under the statute of limitations both because the new claims relate back to the date of the original complaint and because they believe the limitations period should be equitably tolled. DE 57 (Plaintiffs' Reply Memorandum) at 2-8.

An amended complaint "relates back" to the date of the original complaint when it asserts a claim "that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(2). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n.3 (1984). Thus, in determining whether the plaintiffs' proposed new claims relate back to the date of their original claim, "the central inquiry" is whether the defendants received "adequate notice of the matters raised in the amended pleading … by the general fact situation alleged in the original pleading." *Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)); *see also Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 397 (E.D.N.Y. 1998); *Lettis v. United States Postal Serv.*, 973 F. Supp. 352, 362 (E.D.N.Y. 1997). "The analysis employed to resolve this question is essentially an examination of whether there is a common core of operative facts linking the amendments and the original complaint." *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 12-13 (S.D.N.Y. 1985); *see Sokolski*, 178 F.R.D. at 397; *Conteh v. City of New York*, 2001 WL 736783, at *3 (S.D.N.Y. June 28, 2001).

Here, the original complaint alleged that the Curtises devised a scheme to trick the plaintiffs into giving them restaurant equipment in exchange for a promise that they would open a

restaurant for Shpak and Simon once they were married. Complaint ¶¶ 7-52. Part of that scheme, according to the complaint, involved Malcolm and Judith's creation of Simnat as a holding company for the restaurant and their corresponding promise to Shpak that Simnat would belong to her and Simon. *Id.* ¶ 31. Having notified the defendants of that theory of the case in their original complaint, the plaintiffs now seek to assert additional claims based on allegations that, after the engagement between Simon and Shpak ended, the Curtises divested Shpak of her entire ownership interest in Simnat without consideration. PAC ¶¶ 56-61. These claims are a "natural offshoot" of the "basic scheme" alleged in the original complaint, *Oliner*, 106 F.R.D. at 11, and thus provide grounds for relation back under Rule 15(c). *See id.*; *see also In re Chaus Sec. Litigation*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) (finding that common scheme to defraud investors by misrepresenting company's earnings allowed for relation back of claims related to additional financial and accounting manipulations); *Sokolski*, 178 F.R.D. at 397 ("The existence 'of an underlying common scheme or course of conduct which is the basis of the original action and links otherwise distinct transactions' provides ground for relation back under Rule 15(c).") (quoting *In re Austin Discovery Servs., Inc.*, 179 B.R. 390, 397 (Bankr. D. Conn. 1995)).

Given the "general fact situation alleged in the original pleading," *Slayton*, 460 F.3d at 228, the defendants knew, or should have known, that claims regarding the formation and ownership of Simnat might be raised in the course of this litigation. It was by no means unforeseeable when the complaint was filed that the plaintiffs, through discovery, would learn of Shpak's 50 percent stake in Simnat and the issuance of Simnat stock to the Curtises in September 2008. Indeed, much of that information was provided by the defendants in response to the plaintiffs' first demand for discovery. *See* DE 55 ¶ 2, Ex. 1, 3. The defendants therefore can hardly claim to be surprised by

the claims Shpak now seeks to assert. Nor can they demonstrate that they would suffer any undue prejudice as a result of the amendment since the "corporate structure and formation of … Simnat," DE 55 ¶ 2, has manifestly been a topic of discovery in this litigation since at least January 2011. *Id*.

I therefore conclude that the original complaint provided the defendants with adequate notice of the matters the plaintiffs now seek to litigate, and that the new claims thus relate back to the date of the original complaint. Those claims are, accordingly, timely under the relevant statute of limitations. Because the claims are timely asserted, I need not and do not pass on whether there is any equitable basis to toll the limitations period.

2. Fraudulent Conveyance Claims

The plaintiffs also seek to assert new fraudulent conveyance claims under Sections 273-a and 276 of New York's Debtor and Creditor Law ("DCL"). They allege that the transfer of Malcolm and Judith's interest in Simnat to the Trust constituted both actual fraud under the latter statute and constructive fraud under the former. A conveyance is "actually" fraudulent if it is made with "actual intent … to hinder, delay, or defraud present or future creditors." DCL § 276. "Constructive fraud" is generally established by showing that a conveyance was made "without a fair consideration" at a time when the conveyor was insolvent. DCL § 273. Even when a debtor is not insolvent, however, a transfer made "without fair consideration" can be constructively fraudulent under New York law. *See* DCL §§ 273-a, 274, and 275. Specifically, a conveyance made without fair consideration is fraudulent if, at the time of the transfer, the conveyor was "a defendant in an action for money damages" or if "a judgment in such an action has been docketed against him" and he has "failed to satisfy the judgment." DCL § 273-a.

The defendants contend that the amendment is futile because the conveyance at issue did not render Malcolm's and Judith's interests in Simnat unreachable to their creditors, and thus could not have been fraudulent as a matter of law. DE 56 (Defendant's Memorandum) at 15-18. The merit of that argument depends on whether Malcolm and Judith possess an unqualified power to revoke the Trust. Under both New York and California law,[1] where the settlor of a trust retains an unqualified power of revocation, the settlor is considered to be the absolute owner of the trust's corpus so far as the rights of her creditors or purchasers are concerned. S*ee* N.Y. Est. Powers & Trusts Law ("EPTL") § 10-10.6; *In re Rubin*, 160 B.R. 269, 275 (Bankr. S.D.N.Y. 1993); Cal. Prob. Code §§ 18200-18201; *Zanelli v. McGrath*, 166 Cal. App. 4th 615, 633-34 (2008). The settlor cannot defraud her creditors by conveying her own property to the trust, since the trust corpus can be reached by her creditors as if it were held in the settlor's name. *See In re Gallet*, 196 Misc. 2d 303, 307 (N.Y. Sur. Ct. 2003); *In re Plotkin*, 56 Misc. 2d 754, 760 (N.Y. Sur. Ct. 1968); *Gagan v. Gouyd*, 73 Cal.App.4th 835, 842 (1999). Indeed, as far as the settlor's creditors are concerned, the conveyance of her own property to the trust "do[es] not constitute a transfer of any interest at all during the [settlor's] lifetime." *Plotkin*, 56 Misc. 2d at 760; *see In re Granwell*, 20 N.Y.2d 91, 97 (1967) ("Although a transfer of interest was projected, it was not actually completed until [the settlor] died."); *Gagan*, 73 Cal.App.4th at 842. Only upon the settlor's death does a transfer of interest occur, at which point, to the extent that the transfer serves to defeat the claims of the settlor's creditors, the transfer may constitute a fraudulent conveyance and be set aside. *See Granwell*, 20 N.Y.2d at 95; *Gallet*, 196 Misc. 2d at 307.

---

[1] Although neither party has briefed the issue of choice of law, the defendants cite to both New York and California authority in support of their argument. Those two states are the only ones with any substantial connection to the proposed fraudulent conveyance claims. Because the relevant laws of both jurisdictions are largely consistent, I need not and do not decide which state's law applies. *See Bass v. World Wrestling Fed'n Entm't*, 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001); *Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408-409 (S.D.N.Y. 2002).

In contrast to the arrangement described above, where the settlor of a trust does *not* retain an "unrestricted power of revocation, … [the] settlor generally loses all control of the trust's property." *Rubin*, 160 B.R. at 275; *see also In re Mordecai*, 24 Misc. 2d 668, 669 (N.Y. Sup. Ct. 1960), *aff'd*, 210 N.Y.S.2d 478 (App. Div. 1960); *Laycock v. Hammer*, 141 Cal. App. 4th 25, 29-32 (2006). In such circumstances, the trust's assets are reachable by the settlor's creditors to the extent that the creditors can demonstrate that the transfer of the assets to the trust was actually or constructively fraudulent. *See* DCL § 270 et seq.; Cal. Civ. Code § 3439, *et seq*.

Here, the nature and extent of Malcolm and Judith's power to revoke the Trust is not apparent from the face of the proposed amendment. The power may be absolute and unqualified, or it may be restricted in such a way that some or all of the assets held in trust are beyond the reach of Malcolm and Judith's creditors; the proposed pleading is silent on the matter. While that silence might render the pleading defective, and therefore futile, if the Trust were presumed to be unqualifiedly revocable in the absence of evidence to the contrary, no such presumption applies here. Indeed, in New York, absent an explicit reservation of the unqualified right to revoke, the law presumes that the settler retains no such right. *See* EPTL § 7-1.16 ("A lifetime trust shall be irrevocable unless it expressly provides that it is revocable."); *Perosi v. LiGreci*, 31 Misc. 3d 594, 596 (N.Y. Sup. Ct. Feb. 14, 2011) (citing *McKnight v. Bank of New York & Trust Co.*, 254 N.Y. 417 (1930)). California law, on the other hand, does presume that a trust is revocable – but only under certain circumstances that I cannot assume exist here. Specifically, California presumes a trust to be revocable only where the settlor was domiciled in California at the time trust was created, the trust instrument was executed in California, or the trust instrument provides that California law governs the trust. Cal. Prob. Code § 15400. While some or all of the latter

circumstances may prove to be true in this case, none of them is apparent from the face of the proposed amendment. As a result, the plaintiffs' allegation that Malcolm and Judith conveyed their interests in Simnat to the Trust suffices to plead that they placed the relevant assets beyond the reach of a judgment in this case.

In opposition to the proposed amendment, the defendants rely on a "Certification of Trust" that purports to establish for both Malcolm and Judith and unqualified right to revoke the Trust. *See* DE 55-1. That document was neither attached to the proposed new complaint nor incorporated by reference therein. I do not take such extrinsic evidence into account in determining the instant motion to amend. As with a motion to dismiss under Rule 12(b)(6), "[i]n making futility determinations, the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits, or incorporated by reference." *Tokio Marine and Nichido Fire Ins. Co. v. Calabrese*, 2011 WL 5976076, at *17-*18 (E.D.N.Y. Nov. 28, 2011) (quoting *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 WL 6217754, at *3 (S.D.N.Y. Mar. 31, 2006)); *Permatex, Inc. v. Loctite Corp.*, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) ("materials outside of the pleadings … cannot be considered on a motion for leave to amend").

If the defendants have accurately interpreted the Trust certificate, they may well secure a dismissal of the fraudulent conveyance claims on a motion for summary judgment. "The test for futility, however, does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriter's Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424,

452 (S.D.N.Y. 2005) ("An amendment is only futile where it would not survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., and 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004)). Because the defendants cannot establish the futility of the proposed fraudulent conveyance claims without resort to extrinsic evidence, I reject that basis for their opposition to the motion to amend.

C. Undue Delay

The plaintiffs filed the instant motion within the time allowed under a scheduling order I set pursuant to Rule 16(b). They therefore need not demonstrate good cause for any delay in seeking to amend; instead, the burden falls on the defendants to show that the plaintiffs delay was "inordinate" and that the plaintiffs have "no satisfactory explanation … for the delay, and [that] the amendment would prejudice [them]." *Cresswell*, 922 F.2d at 72. The defendants do not meet that burden.[2]

The plaintiffs sought leave to amend approximately 18 months after filing the original complaint and some nine months after receiving the information in discovery on the basis of which they propose to assert their new claims. Although that period of delay is not insignificant, it is certainly no greater than in many cases where amendments to the pleadings have been permitted. *See Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*, 825 F.2d 64, 653 n.6 (2d Cir. 1987)

---

[2] It is of course true that the plaintiffs could have filed their motion to amend before the deadline set for doing so in the original Case Management and Scheduling Order had lapsed. But to the extent the defendants would contend that the plaintiffs should be deemed bound by that deadline, rather than the later one set in the Amended Case Management and Scheduling Order, their quarrel is with my decision to set such an amended deadline over their objection. The time to object to that ruling has long since passed. *See* Fed. R. Civ. P. 72(a). Having failed to seek review of that order, the defendants must content themselves to meet their burden of demonstrating undue delay.

(citing, for example, *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 845-46 (2d Cir. 1981) (amendment allowed three years after commencement of action); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 383-85 (2d Cir. 1968) (amendment allowed after three-year interval and where plaintiff was aware of facts supporting new claims two years before filing of original complaint); *Zeigan v. Blue Cross and Blue Shield*, 607 F. Supp. 1434, 1438 (S.D.N.Y. 1985) (amendment allowed three years after suit was filed); *Green v. Wolf Corp.*, 50 F.R.D. 220, 222-24 (S.D.N.Y. 1970) (amendment allowed four years after commencement of action despite the fact that plaintiff was aware of facts asserted in amended complaint from outset of case)). Moreover, it was not unreasonable for the plaintiffs to defer asserting their new claims while the motion to dismiss their original claims was pending; given the nature of the original claims and of the defendants' arguments in support of dismissal, the plaintiffs may reasonably have concluded that dismissal of the original claims would have fatally undermined any additional claims arising from the alleged fraudulent scheme. Indeed, for this reason, I would conclude that there was "good cause" for the delay even if the plaintiffs had failed to meet the deadline in the Amended Case Management and Scheduling Order.

More fundamentally, the defendants have made absolutely no showing that the plaintiffs acted in bad faith or that they will suffer any prejudice as a result of the proposed amendment. *See State Teachers Retirement Bd.*, 654 F.2d at 856 ("mere delay … absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend"); *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing of prejudice or bad faith."). Accordingly,

I find that the plaintiffs' delay in seeking leave to amend does not in itself warrant denial of leave to amend.

III. Conclusion

For the reasons set forth above, I grant the plaintiffs' motion for leave to amend the complaint.

SO ORDERED.

Dated: Brooklyn, New York
February 14, 2012

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge